IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHAIHEM D. COLSTON,                    *
                                       *
     Plaintiff,                        *
                                       *
vs.                                    *      CIVIL ACTION NO. 17-00313-B
                                       *
NANCY BERRYHILL,                       *
Acting Commissioner of Social          *
Security,                              *
                                       *
     Defendant.                        *

## ORDER

Plaintiff Shaihem D. Colston (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for child insurance benefits under 42 U.S.C. § 402(d) and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*  On April 1, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 18).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED.**

## I.   Procedural History[1]

Plaintiff filed his application for benefits on June 24, 2014, alleging disability beginning March 15, 2014, based on "sleep apnea, high blood pressure, ADHD, and learning disability." (Doc. 11 at 168, 188, 193). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Alan Michel (hereinafter "ALJ") on May 13, 2016. (Id. at 43). Plaintiff attended the hearing with his counsel and provided testimony related to his claims.[2] (Id. at 51). On July 12, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 25). The Appeals Council denied Plaintiff's request for review on June 5, 2017. (Id. at 1). Therefore, the ALJ's decision dated July 12, 2016, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on May 29, 2018. (Doc. 22). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

[2] The ALJ did not utilize the services of a vocational expert at the hearing.

## II.  Issues on Appeal

1.  **Whether the ALJ erred in finding that Plaintiff's attention deficit hyperactivity disorder (ADHD) and learning disorder were non-severe impairments?**

2.  **Whether substantial evidence supports the Residual Functional Capacity ("RFC")?**

3.  **Whether the ALJ erred in relying on the GRIDS to find that Plaintiff is not disabled?**

## III.  Factual Background

Plaintiff was born on August 29, 1995, and was twenty years of age at the time of his administrative hearing on May 13, 2016. (Doc. 11 at 51).  Plaintiff graduated from high school taking special education classes from kindergarten through twelfth grade. (Id. at 51, 57).

Plaintiff has no prior significant gainful employment.[3]  (Id. at 54).  Plaintiff testified that he cannot read.  (Id. at 56).  He received his drivers' license after passing the oral examination. (Id. at 56).  He can drive but does not drive regularly.  (Id. at 54-55).  He can take care of his own personal care needs but does not do any chores, cooking, shopping, or yard work.  (Id. at 55).

According to Plaintiff, he cannot work because he has trouble with shortness of breath, and he has problems with understanding,

---

[3] Plaintiff testified that he once attempted to get a job through vocational rehabilitation at Goodwill Easter Seals, but he failed the test because he could not read.  (Doc. 11 at 56).

remembering, and carrying out instructions and responding appropriately to supervision and work pressures. (Id. at 54, 58). Plaintiff testified that he takes medication for weight loss but no longer takes medication for ADHD because he cannot afford it. (Id. at 57-58).

IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists,

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.    **Statutory and Regulatory Framework[5]**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any

---

[5] "The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence." <u>Bruce v. Berryhill</u>, 2018 U.S. Dist. LEXIS 82103, *4, 2018 WL 2248452, *2 (M.D. Ala. May 16, 2018) (citing 42 U.S.C. § 423(a)). "The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program." <u>Id.</u> "SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line." <u>Id.</u> "Childhood disability insurance benefits ("CDIB") are rendered to a disabled adult under the old-age and survivors insurance benefits section of the Social Security Act." <u>Id.</u> (citing 42 U.S.C. § 402(d)). "In order to receive CDIB as a disabled adult, a claimant must establish that he or she is the child of an individual who is entitled to old-age or disability insurance benefits and is dependent on the insured, is unmarried, and was under a disability as defined in the Act that began before he attained the age of twenty-two." <u>Id.</u> (citing 42 U.S.C. §§ 402(d)(1), 423(d)(1)(A); 20 C.F.R. § 404.350). "[T]he law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled." <u>Id.</u> (citing <u>Patterson v. Bowen</u>, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986)). As in <u>Bruce</u>, the only distinction with the case at hand are the added elements of CDIB. <u>Id.</u>

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  Discussion**

> **A.  The ALJ's finding, at step two, that Plaintiff's attention deficit hyperactivity disorder (ADHD) and learning disorder were non-severe impairments is not reversible error.**

In his brief, Plaintiff argues that the ALJ erred in finding that his ADHD and learning disorder were non-severe impairments. (Doc. 12 at 2-6).  The Commissioner counters that the ALJ's findings are supported by substantial evidence.  (Doc. 15 at 6).  Having carefully reviewed the record in this case, the Court finds that substantial evidence does not support the ALJ's finding that Plaintiff's ADHD and learning disability are non-severe.  However, for purposes of the step two analysis *only*, the Court finds that

this error was harmless at step two.

"At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). See also Tuggerson-Brown v. Commissioner of Soc. Sec., 572 Fed. Appx. 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("[W]e have recognized that step two requires only a finding of 'at least one' severe impairment to continue on to the later steps. . . . [T]he regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. . . . Here, the ALJ found multiple severe impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson-Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); Bennett v. Astrue, 2013 U.S. Dist. LEXIS 115951,

*14, 2013 WL 4433764, *5 (N.D. Ala. 2013) ("'[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe' and, even if the ALJ erred by not recognizing every severe impairment, the error was harmless since he found at least one such impairment."); <u>Ferguson v. Astrue</u>, 2012 U.S. Dist. LEXIS 139135, *25, 2012 WL 4738857, *9 (N.D. Ala. 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the combined effect of *all* the claimant's impairments.") (emphasis in original).

Based on a thorough review of the record in this case, the Court finds that the ALJ's determination that Plaintiff's ADHD and learning disorder were non-severe is not supported by substantial evidence. The record shows that Plaintiff was diagnosed with ADHD in January 2012 and prescribed Adderall.[6] (Doc. 11 at 246-47). In 2012 and 2013, Plaintiff's activity analysis repeatedly was found to be "abnormal," prompting recommendations from his treatment

---

[6] Consultative psychologist, Dr. Jack Carney, Ph.D., noted that Plaintiff reported being on medication for inattention since he was five years old. (Doc. 11 at 281).

provider that he needed behavioral modification and family therapy, as well as medication. (Id. at 249-50, 252-53, 256).

Plaintiff was diagnosed with a learning disorder in 2005. (Id. at 106). Plaintiff's school records show that he completed high school. However, he was in special education classes from kindergarten through twelfth grade; he failed the second grade; he received a certificate of completion, not a diploma; and his grades were poor.[7] (Id. at 57, 106, 233-37, 278).

In addition, consultative psychologist, Dr. Jack Carney, Ph.D., examined Plaintiff on November 17, 2014, and found that he was unable to do simple math; he could count backward from twenty to one but was unable to spell "world" forward or backward; his recent and remote memory was normal, but he had problems with immediate memory, recalling only one of three items after five minutes; his fund of information and abstract reasoning were abnormal, and his judgment/insight "seemed impaired," although his thought process and content were normal. (Id. at 277-80). Dr. Carney opined that Plaintiff functioned in the borderline range of intelligence and noted that, while there did not appear to be a lifelong history of mental retardation, there appeared to be a

---

[7] While the ALJ observed that Plaintiff was able to handle a course load of five classes per term in high school, taking such classes as World History, United States History, English, Biology, and Math, the record shows that Plaintiff made F's and D's in World History, a D in United States History, F's and D's in English, F's and D's in Biology, and F's and D's in math. (Doc. 11 at 31, 237).

history of "mental slowness." (Id. at 280). Dr. Carney noted Plaintiff's reports that he is not afraid of people but does not like being around a lot of people and that he has trouble concentrating, struggles with reading and writing, and is very slow. (Id. at 281-82). Dr. Carney's diagnosis was ADHD, severe, inattentive type, and his prognosis was that "a favorable outcome is not expected". He also noted that Plaintiff had been on medication for inattention since he was five years old and was still struggling with symptoms of inattention.[8] (Id. at 281). Dr. Carney further opined that Plaintiff "does not appear to possess the ability to understand, carry out and remember instructions, and respond appropriate[ly] to supervision, co-workers, and work pressures in a work setting" and is not capable of managing funds. (Id.). Dr. Carney found that Plaintiff was cooperative and a reliable informant. (Id.).

In addition, in November 2014, State Agency reviewer, Dr. Joanna Koulianos, Ph.D., opined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace; that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, in his ability to carry out detailed instructions, in his ability to maintain attention and concentration for extended periods, and in his ability to respond

---

[8] Plaintiff testified that he no longer takes Adderall because he cannot afford it. (Doc. 11 at 57).

appropriately to changes in the work setting, but that he should be able to carry out short and simple job instructions and attend and concentrate for two hour periods.[9]   (Id. at 110-11).

The record also shows that Plaintiff has a driver's license and drives on occasion.  However, he passed only the oral driver's test, not the written test.  (Id. at 56-57).  The driving instructor had to read the test to him.  (Id. at 57).  In addition, Plaintiff attempted to obtain a job through Goodwill Easter Seals' vocational rehabilitation program but was unable to pass the test because he could not read it.  (Id. at 56).

Based on the foregoing, the Court finds that substantial evidence does not support the ALJ's finding that Plaintiff's ADHD and learning disorder are non-severe impairments.  However, the ALJ found, at step two of the sequential evaluation process, that Plaintiff did have the severe impairment of obesity, and continued with the sequential analysis.  Therefore, any error in failing to find that Plaintiff's ADHD and learning disorder were also severe impairments was harmless, for purposes of the step two analysis, because the ALJ subsequently considered Plaintiff's ADHD and learning disorder in assessing his RFC. (Doc. 11 at 36). See Gray v. Commissioner of Soc. Sec., 550 Fed. Appx. 850, 853-54 (11th Cir. 2013) (per curiam); see Packer v. Commissioner, Soc. Sec. Admin.,

_____

[9]Dr. Koulianos noted that Plaintiff had previous full-scale IQ scores of 76 and 83. (Doc. 11 at 106).

542 Fed. Appx. 890, 892 (11th Cir. 2013) (per curiam); Heatly v. Commissioner of Soc. Sec., 382 Fed. Appx. 823, 824-25 (11th Cir. 2010) (per curiam).

### B. Substantial evidence does not support the Residual Functional Capacity ("RFC").

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).

In addition, as part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner

of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so.  Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  Also, an ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."  Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or

non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

A review of the ALJ's decision in the instant case demonstrates that he found that Plaintiff has the severe impairment of obesity, and the non-severe impairments of hypertension, obstructive sleep apnea, hypertrophy of tonsils and adenoids, ADHD, and learning disorder. (Doc 11 at 27). As noted, *supra*, the ALJ erroneously found Plaintiff's ADHD and learning disorder were non-severe; however, he did consider them in determining Plaintiff's RFC and concluded that Plaintiff has the RFC to perform a full range of sedentary work, with no restrictions. (Id. at 33, 36).

Plaintiff argues that the RFC is not supported by substantial evidence because it does not account for the mental limitations

caused by his severe, non-exertional impairments, ADHD and learning disorder. The Court agrees. Having reviewed the evidence at length, the Court is satisfied that the RFC is not supported by substantial evidence.

As discussed, the substantial evidence, detailed above, establishes that Plaintiff has the severe impairments of ADHD and learning disorder. Indeed, consultative examining psychologist, Dr. Carney, opined that these conditions render Plaintiff unable to "understand, carry out and remember instructions," to "respond appropriate[ly] to supervision, co-workers, and work pressures in a work setting" and to manage funds. (Id. at 281). Consistent with this evidence, State Agency reviewing psychologist, Dr. Koulianos, opined that these conditions created moderate limitations in Plaintiff's ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting, but that he should be able to carry out short and simple job instructions and attend and concentrate for two-hour periods. (Id. at 110-11). These opinions are consistent with Plaintiff's school records and his treatment records for these conditions, as detailed above. Accordingly, the ALJ's decision to assign Dr. Carney's and Dr. Koulianos' opinions little weight (Doc. 11 at 32) is not supported by substantial evidence.

Moreover, a review of the ALJ's decision reveals that he made no accommodation whatsoever for the limitations caused by these impairments in the RFC.  The ALJ added no restrictions whatsoever to the RFC for a full range of sedentary work.  In support of his decision, the ALJ noted that he observed no difficulty on the part of Plaintiff when attending the hearing; that Plaintiff completed high school; that Plaintiff worked part time in high school for class credit; that Plaintiff was able to take care of his own personal care needs (*i.e.*, bathing and grooming); that Plaintiff could operate a microwave and cook a frozen dinner; that Plaintiff went to church and attended doctors' appointments regularly; that Plaintiff had some normal findings upon examination by Dr. Carney (such as normal orientation, thought processes, some normal memory, no hallucinations, and was able to understand normal speech); that Plaintiff had some normal findings upon examination by his treatment providers; and that Plaintiff  watched television and listened to music, which indicated his ability to attend, concentrate, and focus.  (Doc. 11 at 29-31).

The ALJ rejected the opinions of consultative, examining psychologist Dr. Carney and State Agency reviewing psychologist Dr. Koulianos, which contradicted this evidence and the substantial evidence detailed above, such as evidence that although Plaintiff completed the twelfth grade, he was in special education; he never received a diploma; he had failing grades; and he is virtually

illiterate.  (Id. at 56-57, 106, 233-37, 278).  Given the largely uncontroverted evidence that Plaintiff's non-exertional mental impairments, ADHD and learning disorder, cause significant limitations in his ability to perform work, the Court finds that the RFC, which did not accommodate *any* impairments caused by Plaintiff's ADHD and learning disorder, is not supported by substantial evidence.

**C. The ALJ erred in relying on the Grids.**

Last, based on the evidence detailed above, the Court finds that the ALJ also erred in relying on the Medical-Vocational Guidelines ("Grids")[10] to make a determination that Plaintiff was not disabled.  As stated, the ALJ found that Plaintiff had the severe impairment of obesity and the non-severe impairments of hypertension, obstructive sleep apnea, hypertrophy of tonsils and adenoids, ADHD, and learning disorder; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any Listing; that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work; that Plaintiff had no past relevant work; and that based on the RFC for

---

[10] "The Grids are a series of matrices which correlate to a set of variables — the claimant's residual functional capacity, age, education, background, and previous work experience — and can be used, at step five, to determine whether claimant has the ability to adjust to other work in the national economy."  Heatly, 382 Fed. Appx. at 825. "On entry of these variables into their appropriate matrix, a determination of disabled or not disabled is rendered." Id.

a full range of sedentary work, Plaintiff's age, education, and work experience, a finding of "not disabled" was directed by Medical-Vocational Rule 201.27.[11]  (Id. at 27-37).

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  The ALJ must articulate specific jobs that the claimant is able to perform given his or her age, education, and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." Id.

One means by which the Commissioner meets this burden is by reliance on the Grids.  Id.  However, exclusive reliance upon the Grids is inappropriate "'either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.'"[12]  Id. at 1202.

_____

[11] Medical-Vocational Rule 201.27 provides that a person is not disabled if he or she has an RFC to perform the full range of sedentary work, is a younger individual (age 18-44), has a high school education or more, and has unskilled or no work experience. See Mabien v. Apfel, 1999 U.S. Dist. LEXIS 21076, *26, 2000 WL 206619, *10 (S.D. Ala. Feb. 8, 2000) (citing 20 C.F.R. Pt 404, Subpt. P, App. 2, Rule 201.27).

[12] Nonexertional limitations are those limitations that "'affect an individual's ability to meet the nonstrength demands of jobs' and include mental limitations and restrictions, pain limitations, and all physical limitations and restrictions that are not reflected in the seven strength demands." Callens v. Astrue,

Where nonexertional impairments are present, "[t]he ALJ must 'make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.'" Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). "'It is only when the claimant can clearly do *unlimited* types of [work at a given level] that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.'" Allen, 880 F.2d at 1202 (emphasis in original) (citations omitted); see also Garred v. Astrue, 383 Fed. Appx. 820, 824 (11th Cir. 2010) ("When a claimant has non-exertional impairments that significantly limit her ability to work, the ALJ may use the Guidelines as a framework, but should also consult with a VE to determine how the claimant's impairments affect her ability to perform other jobs that exist in the national economy.") (citing Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)).

---

2012 U.S. Dist. LEXIS 115043, *18, 2012 WL 3542200, *7 (N.D. Ala. Aug. 15, 2012) (quoting S.S.R. 96-4p). "Exertional limitations 'affect your ability to meet the strength demands of jobs,' and include 'sitting, standing, walking, lifting, carrying, pushing, and pulling.'" Id. at *6 (quoting 20 C.F.R. § 404.1569(a)).

In the instant case, the ALJ erroneously found that Plaintiff's non-exertional impairments (ADHD and learning disorder) were non-severe, as the substantial evidence, including the opinions of Dr. Carney and Dr. Koulianos, clearly established that Plaintiff struggled with reading and writing; he had trouble concentrating; his judgment/insight were impaired; and he functioned in the borderline range of intelligence. Given these nonexertional functional limitations, it is far from clear that Plaintiff can do unlimited types of work at the sedentary level. As a result, the ALJ's reliance on the Grids was error. He was required to utilize a vocational expert to establish whether Plaintiff could perform work which exists in national economy in light of his nonexertional functional limitations.

Accordingly, this matter must be remanded for consideration by a vocational expert regarding whether there are specific jobs in the national economy that Plaintiff could perform. On remand, the Commissioner should utilize the services of a vocational expert to identify what sedentary jobs, if any, Plaintiff can perform in light of his nonexertional limitations. See Gray v. Massanari, 2001 U.S. Dist. LEXIS 6619, *9 (April 17, 2001), *report and recommendation adopted by* 2001 U.S. Dist. LEXIS 6544, *1, 2001 WL 530704, *2 (S.D. Ala. May 1, 2001) (citing Francis v. Heckler, 749 F.2d 1562 (11th Cir. 1985)).

**VII.  <u>Conclusion</u>**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for child insurance benefits and supplemental security income be **REVERSED and REMANDED**.

**DONE** this **13th** day of **September 2018**.

_____**/s/ SONJA F. BIVINS**_____
**UNITED STATES MAGISTRATE JUDGE**
